J-A08001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HERIBERTO LABOY AMARO, | |
| Appellant | No. 551 MDA 2014 |

Appeal from the Judgment of Sentence Entered February 18, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001629-2013

BEFORE:  SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED MAY 18, 2015**

Appellant, Heriberto Laboy Amaro, appeals from the judgment of sentence entered on February 18, 2014, in the Dauphin County Court of Common Pleas.  We affirm.

The trial court set forth the relevant facts underlying this case as follows:

> Appellant, Heriberto Amaro and Juanita Caban, a woman with whom he had a prior romantic relationship, are the biological parents of one child. Ms. Caban testified that dealings between [her] and Appellant had been tense because he wanted to resume their romantic relationship but she refused. On September 7, 2012, [after their] romantic relationship had ended, a verbal and physical altercation occurred between Appellant and Ms. Caban during a custody exchange. The incident took place outside of Ms. Caban's apartment in the Hall Manor apartment complex in Harrisburg City. After the

---

[*]  Retired Senior Judge assigned to the Superior Court.

altercation, Appellant took custody of his child and Ms. Caban, along with two of her other children travelled to Hershey to pick up her boyfriend, Alberto Almestica. At the time, she owned and drove a red Chrysler Town and Country minivan. Ms. Caban stated that while in the car with Mr. Almestica, Appellant called and threatened her. Mr. Almestica testified that Ms. Caban was arguing with someone on the cellphone while he was in the car.

They proceeded to Palmyra to Mr. Almestica's house, and then returned to Harrisburg to make a police report regarding the earlier altercation with Appellant. Ms. Caban provided a written statement to Officer Stephanie Barrelet of the Harrisburg Bureau of Police (HBP). Officer Barrelet confirmed that she had felt lumps on the back of Ms. Caban's head where she had described being struck by Appellant.

Once the report was completed, Ms. Caban, Mr. Almestica and her children drove to the Park Apartments in Harrisburg where Mr. Almestica's brother, Miguel, lives. Upon arrival, Ms. Caban received a call from her sister, Natasha Ortiz. Mr. Almestica stated that, based on Ms. Caban's reaction, the call was about something very serious.

Ms. Ortiz testified that Appellant and two other men, including one named Kevin Garcia who she knew to be Appellant's cousin, came to her house in an older blue pickup truck. Ms. Ortiz stated that Appellant and Mr. Garcia entered the house and wanted to speak with her. She and Appellant went into the kitchen, but Mr. Garcia left the house. Ms. Ortiz testified that, while in the kitchen, Appellant said that "if [her] sister [Ms. Caban] couldn't be with him that she can't be with anybody else." Ms. Ortiz responded by saying "you can't force [someone] to be with you." Appellant then displayed a gun he retrieved from his hip area and left the house. Ms. Ortiz stated that when she went outside, the three men appeared to be together and, after having a discussion she could not hear, they left in the blue truck. Ms. Ortiz called Ms. Caban to tell her about what had happened during her encounter with Appellant.

When Ms. Caban arrived at the Park Apartments and received the call from her sister, she, Mr. Almestica and the children rushed to his brother's third floor apartment just about the time she had seen Appellant drive [the] blue truck into the parking lot. From the apartment window, Ms. Caban and Mr. Almestica saw the three men exit the truck and go into and out

of neighboring apartment buildings. When Mr. Garcia spotted Ms. Caban's red minivan, Appellant backed the blue truck behind the van, in a perpendicular fashion, which blocked it from moving. Both Ms. Caban and Mr. Almestica saw Mr. Garcia shoot a gun at the van. Mr. Almestica testified that the man he identified in court as the Appellant was standing by Mr. Garcia and speaking to him during the shooting. The men got back into the truck and, with Appellant at the wheel, drove away out of the parking lot.

Ms. Caban called 911 to report the incident and Detective Dennis Simmons of the HBP, responded to the scene within 5 minutes of the dispatch order. At the time of the incident, Detective Simmons had been a uniformed patrol officer assigned to the Housing Authority Unit. Detective Simmons had been told that the incident involved a domestic dispute with shooting involved. When he arrived to the address provided, #1141 Park Apartments, 3rd floor, he found several adults including Ms. Caban and Mr. Almestica in a distraught, afraid and nervous state. Ms. Caban relayed the actions of Appellant and Mr. Garcia that she had observed.

Detective Simmons secured the crime scene and noted holes in the back bumper and window of the van. He remained there until Karen Lyda, a forensics investigator for the HBP arrived then continued to interview those present in the apartment. Subsequently, Ms. Caban provided Detective Simmons a written statement and identified Mr. Garcia's picture in a photo array. At trial, Mr. Almestica identified Appellant as the driver of the blue truck.

When Officer Karen Lyda investigated the crime scene for evidence, she collected two mutilated metal projectiles. One was found in a bag of clothes located inside the van near the second row of seats, Officer Lyda found the other projectile lodged in a pile of mulch in front of a nearby apartment building, #1406, after a bystander alerted her to that location as the bullet had passed by his head. Officer Lyda observed a hole at the top of the broken rear window that appeared to be caused by a bullet, a bullet strike at the bottom of the rear bumper, damage to the headrest on the second row seat, and damage to the top of the van by the rear window that may have also been caused by a bullet. After testing by the Pennsylvania State Police laboratory, it was determined that both projectiles were .32 caliber bullet jackets had been fired from the same unknown firearm.

Trial Court Opinion, 7/24/14, at 3-6. Appellant was arrested and charged at Dauphin County Criminal Docket Number 1629 CR 2013 as follows: count one - possession of firearm prohibited; count two - simple assault; count three - recklessly endangering another person; count four - harassment; count five - conspiracy (recklessly endangering another person); count six - unlawful firing of weapon in city limits; count seven - simple assault; count eight - recklessly endangering another person; and count nine - conspiracy (recklessly endangering another person).

Following a jury trial on February 10, 2014 through February 12, 2014, the jury found Appellant guilty at counts two, four, and five. The jury acquitted Appellant of the charges at counts one, three, and six, and counts seven, eight, and nine were withdrawn. On February 18, 2014, the trial court sentenced Appellant to consecutive terms of one to two years of incarceration on counts two and five, for an aggregate term of two to four years of imprisonment in a state correctional institution.[1] Appellant filed a timely post-sentence motion, which was denied on March 13, 2014. On March 26, 2014, Appellant filed a timely notice of appeal.

On appeal, Appellant raises two issues for this Court's consideration:

1. Was the evidence at trial insufficient to prove beyond a reasonable doubt that the Appellant was guilty of simple assault by physical menace where the Commonwealth failed to show

---

[1] The trial court imposed a $25.00 fine on the summary offense of harassment at count four.

that the [A]ppellant put another in fear of imminent serious bodily injury by physical menace?

2. Whether the trial court erred in denying Appellant's post-sentence motion for arrest of judgment where the jury verdict of guilty on the charge of conspiracy to recklessly endanger another person was against the weight of the evidence because the Commonwealth failed to show that Appellant was in possession of a gun, that the alleged victims were in the immediate area where the shots were fired, and where the Commonwealth's witnesses statements and testimony conflicted on numerous occassions [sic]?

Appellant's Brief at 6 (full capitalization and underlining omitted).

In Appellant's first issue on appeal, he challenges the sufficiency of the evidence with respect to his conviction for simple assault. Appellant's Brief at 13. Appellant asserts that the Commonwealth established only that he was at the scene near the gunman, Kevin Garcia, when Mr. Garcia shot at Ms. Caban's vehicle. *Id*. at 15. We conclude that Appellant's claim lacks merit.

Our standard of review is as follows:

[W]hen reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, supports all of the elements of the offense beyond a reasonable doubt. In making this determination, we consider both direct and circumstantial evidence, cognizant that circumstantial evidence alone can be sufficient to prove every element of an offense. We may not substitute our own judgment for the jury's, as it is the fact-finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted.

*Commonwealth v. Sanchez*, 82 A.2d 943, 972 (Pa. 2013) (internal citations omitted). Simple assault by physical menace is defined in the Crimes Code as:

**2701. Simple assault**

**(a) Offense defined.--** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

* * *

(3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]

18 Pa.C.S. § 2701(a)(3).

Additionally, it is well settled that "[a]n actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense." *Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014) (citation omitted). "There is no minimum amount of assistance or contribution requirement, for it has long been established ... that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony." *Id*. (internal quotation marks and citation omitted). "Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity." *Id*. (citation omitted). "Accomplice liability does not create a new or separate

crime; it merely provides a basis of liability for a crime committed by another person." *Id*. (citing 18 Pa.C.S. § 306). However, a defendant cannot be an accomplice based simply on evidence that he was present at the crime scene. *Id*.

The trial court aptly addressed this issue:

[u]pon review of the evidence of record in a light most favorable to the Commonwealth as the verdict winner, the sequence of events permitted the jury to infer that Appellant, as the actual person that had a grievance with Ms. Caban, acted along with Mr. Garcia with the intent to place Ms. Caban and Mr. Almestica in fear of imminent serious bodily injury by their menacing actions. On the heels of an earlier verbal and physical altercation, Ms. Caban received a cellphone call from Appellant. Appellant went to Ms. Caban's sister's residence with Mr. Garcia and another individual and represents to Ms. Ortiz that if he can't have [Ms. Caban], no one can have her. Thereafter, he displays a gun to Ms. Ortiz. Outside, Ms. Ortiz sees Appellant confer with Garcia and leave in a blue truck, the same blue truck which is driven by Appellant to the apartment complex of Mr. Almestica's brother. At the Park Apartments, Ms. Caban, Mr. Almestica and the children had taken refuge from a possible repeat encounter with Appellant. After searching the area, Mr. Garcia spots Ms. Caban's minivan and Appellant proceeds to park behind the vehicle in a way to prevent it from being moved. Eyewitnesses then see Mr. Garcia fire gunshots into the van while Appellant is with him and as a group they drive away.

Armed with the earlier encounter with Appellant, the warning given by Ms. Ortiz over the phone and her eyewitness observation of Appellant's concerted actions with Mr. Garcia, Ms. Caban made a distraught call to the police for the second time that day. It was entirely proper for the jury to infer from this evidence that Ms. Caban would be in fear of serious bodily injury when she witnessed the intentional acts by Appellant to seek her out and aid in the commission of Mr. Garcia's crime. It was also a reasonable inference by the jury that based on the sequence of events, Appellant encouraged and aided in the actions carried out by Mr. Garcia in reaction to his ongoing conflict with Ms. Caban. This Court finds that the evidence presented was

- 7 -

sufficient for the jury to find Appellant guilty of Simple Assault by Physical Menace.

Trial Court Opinion, 7/24/14, at 7-8.

We agree with the trial court's determination. Pursuant to the applicable standard of review and through the theory of accomplice liability, Appellant's actions in concert with Mr. Garcia are sufficient to establish Appellant's guilt of simple assault by physical menace beyond a reasonable doubt. Accordingly, no relief is due.

In Appellant's second issue, he challenges the weight of the evidence supporting his conviction for the crime of conspiracy to recklessly endanger another person. We begin by noting our standard of review:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the factfinder's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 698-699 (Pa. Super. 2014) (citation and quotation marks omitted). Additionally,

> a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them,

or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id*. at 699 (citation and quotation marks omitted).

In order to convict a defendant charged with conspiracy, the Commonwealth must prove: "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." *Commonwealth v. Tejada*, 107 A.3d 788, 793 n.4 (Pa. Super. 2015) (quoting *Commonwealth v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012), and citing 18 Pa.C.S. § 903(a), (d)). Moreover, a conspiracy may be inferred where it is demonstrated that the relationship, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. *Commonwealth v. McCoy*, 69 A.3d 658, 664 (Pa. Super. 2013) (citation omitted).

Here, the crime underlying the conspiracy is recklessly endangering another person. The Crimes Code provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

Applying these standards, the trial court addressed Appellant's challenge to the weight of the evidence:

Upon review of the record, it is clear that Appellant and Mr. Garcia were acting together. They went to Ms. Ortiz's residence together specifically looking for Ms. Caban, left together and were seen together arriving at the Park Apartments shortly thereafter. Although Ms. Caban was not sure whether Appellant had a gun and Mr. Almestica said he did not see a gun, Ms. Ortiz testified that Appellant displayed a gun to her at a time when he expressed that if he could not have Ms. Caban, nobody could. The circumstances surrounding the events of the crime point to the focus being Appellant's serious conflict with Ms. Caban. She saw him in the driver's seat when the men arrived at the Park Apartments. While in the parking lot, [Appellant] was searching the buildings along with Mr. Garcia and once the men spotted Ms. Caban's van, [Appellant] moved the truck he had been driving for the purpose of blocking the van.

The evidence also established that the men acted as a group during the entire episode. That episode, which included Appellant, culminated in Garcia firing a gun in the lot of a residential apartment complex, during daylight hours resulting in at least one bullet landing near a building far afield from the van he was targeting. The inference drawn by the jury of Appellant's involvement in the episode based on his own actions, based on the central role he played in the episode and based on all of the surrounding circumstances to find him guilty of conspiracy does not shock one's sense of justice.[12]  Again, if there were any questions of credibility or the weight given any inconsistent testimony, the determination of what evidence and testimony to believe and credit during the trial lay entirely within the purview of the jury who rendered the guilty verdict and the verdict may not be disturbed unless it shocks one's sense of justice. After review, the court finds that the verdicts rendered in this case [are] not so outrageous as to shock its sense of justice and as such, should remain undisturbed.

[12] This Court notes that during oral argument on Appellant's post-sentence motion it was conceded that sufficient evidence was presented on the charge of Conspiracy to Commit Reckless Endangerment of Another Person … to sustain the Commonwealth's burden of proof on the charge. (*See* Memorandum Order, 3/13/14, J. Lewis).

Trial Court Opinion, 7/24/14, at 10-11.

After review, we agree with the trial court and find there was no abuse of discretion in the trial court's conclusion that the verdict was not shocking to one's sense of justice. Appellant and his co-conspirator, Mr. Garcia, engaged in a course of conduct that resulted in Mr. Garcia repeatedly discharging a firearm into Ms. Caban's vehicle in a residential area, where the bullets could have struck any number of people in the area. N.T., 2/10/14, at 165; Complaint, 4/4/13, at 5. The jury was free to credit the testimony that established that Appellant participated in a conspiracy with Mr. Garcia that placed or may have placed others in danger of seriously bodily injury or death. *Landis*, 89 A.3d at 698-699. Therefore, Appellant is entitled to no relief.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015

- 11 -