J-A08021-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| JARED D. ENGLEMAN, | : | |
| Appellant | : | |
| | : | No. 1320 MDA 2014 |

Appeal from the Judgment of Sentence Entered May 5, 2014,
in the Court of Common Pleas of Berks County,
Criminal Division, at No(s): CP-06-CR-0003668-2011

BEFORE:    SHOGAN, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 08, 2015**

Jared D. Engleman (Appellant) appeals from a judgment of sentence entered after a jury convicted him of criminal conspiracy - possession of a firearm prohibited.  We affirm.

The factual and procedural history underlying this matter can be summarized as follows.  On June 29, 2011, Lieutenant Adam R. Kosheba of the Pennsylvania State Police Fugitive Apprehension Unit was part of a task force[1] put together to serve an arrest warrant on Matthew Connor (Matthew).  Matthew was believed to be in the area of the home of his father, Maurice Connor (Maurice), located near Pine Swamp Road in Albany Township, Berks County.  When Matthew was located, a Norinco Mak-90

---

[1] Other agencies involved in this task force were the United States Marshals Service and the Berks County Sheriff's Department.

*Retired Senior Judge assigned to the Superior Court.

Sporter, an AK-47 type weapon (AK-47), was at his feet.[2]  The AK-47 was loaded.  Subsequently, Detective Kurt Tempinski tested the weapon and found it to be in working condition.

On July 1, 2011, Trooper Robert Norton interviewed Appellant at Engleman's Auto Body.  Appellant told Trooper Norton that he had known Matthew since they were 13 years old.  During the course of the interview, Appellant described Matthew as "being off his rocker." N.T., 3/6/2014, at 75. Appellant told Trooper Norton that Matthew "was very into firearms and guns and shooting." *Id*. at 76-77.  Appellant informed Trooper Norton that he and Matthew "would go to the shooting range down the street from the Connor residence on Pine Swamp Road and that … sometimes [Maurice] would accompany them." *Id*. at 97.  Appellant stated that when Maurice went with Matthew to the shooting range, Matthew used firearms belonging to Maurice. *Id*. at 98.

Appellant also told Trooper Norton about the AK-47.  Appellant said that he had purchased the AK-47 from Army and Navy in Whitehall, Pennsylvania in 2004, and subsequently sold it to Maurice in a face-to-face transaction.  Appellant also sold a .17-caliber rifle to Maurice several years

---

[2] Sheriff's deputy Kyle Pagerly and his K-9 partner were searching behind the home in connection with the task force.  Matthew pointed an AK-47 at Pagerly, an exchange of gunfire ensued, and both Pagerly and Matthew were killed.  The jury did not hear any testimony about the circumstances surrounding the deaths of either Pagerly or Matthew.

later.  Appellant told Trooper Norton that it "was a common practice for him to issue or sign a handwritten receipt acknowledging that the firearm was transferred from him to another party." *Id*. at 86.  Appellant signed an affidavit confirming this information at the close of the interview. *Id*. at 89.

On July 6, 2011, police executed a search warrant at Maurice's residence.  At that time, Maurice provided the troopers with a receipt, signed by Appellant, which confirmed the sale of the .17 caliber rifle from Appellant to Maurice in 2009.  During the execution of this search warrant, Trooper Robert E. Hess viewed "numerous guns and gun safes, as well as numerous receipts for guns that [Maurice] had purchased." *Id*. at 153.  In fact, Maurice had receipts dating back to the mid-1960s.  No receipt for the AK-47 was located.

On August 19, 2011, Trooper Norton, along with Trooper Hess, returned to Engleman's Auto Body and arrested Appellant.  Appellant told the troopers that he sold the AK-47 to Maurice because at the time of the sale Appellant was "living out of his truck and needed money." *Id*. at 157-58.  Appellant told the troopers "that he had heard from other people that [Matthew] wasn't supposed to have guns, but he characterized that information as coming from no one credible." *Id*. at 96. Additionally, Appellant told the troopers that "he believed about two to three years prior to this interview that [Matthew] had gotten arrested for shooting at cops."

*Id*. at 96. Appellant was also "aware at one point [Matthew] had been sent away to a mental institution" while they were still in high school. *Id*. at 96-97.

Appellant was charged with two violations of the Pennsylvania Uniform Firearms Act (UFA): 1) a felony for one who "knowingly or intentionally sells, delivers or transfers a firearm under circumstances intended to provide a firearm to any person, purchaser or transferee who is unqualified or ineligible to control, possess or use a firearm" pursuant to 18 Pa.C.S. § 6111(g)(2); and 2) a misdemeanor for loaning, lending, or giving a firearm in violation of UFA pursuant to 18 Pa.C.S. § 6115(a). Appellant was also charged with conspiracy to commit a violation of the UFA pursuant to 18 Pa.C.S. §§ 903(a)(1) and 6105(a). These offenses arose from the sale of the AK-47 which Appellant had purchased originally on October 19, 2004.

Appellant was tried before a jury on March 6-7, 2014. The jury found him guilty of conspiracy to commit persons not to possess a firearm, and not guilty of selling a firearm to someone who is ineligible to possess one.[3]

On May 5, 2014, Appellant was sentenced to two to four years of incarceration. Appellant timely filed a post-sentence motion, which was denied on July 21, 2014. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

---

[3] It is unclear what happened to the charge for violating 18 Pa.C.S. § 6115(a) other than that it was "withdrawn." N.T., 3/7/2014, at 32.

On appeal, Appellant sets forth arguments with respect to the sufficiency of the evidence to sustain his conviction, the statute of limitations, and the discretionary aspects of his sentence. Appellant's Brief at 13-14. We begin with an analysis of the sufficiency of the evidence. Our standard of review in determining whether the evidence was sufficient

> requires that we consider the evidence admitted at trial in a light most favorable to the Commonwealth, since it was the verdict winner, and grant it all reasonable inferences which can be derived therefrom. The evidence, so viewed, will be deemed legally sufficient to sustain the jury's conviction on appeal only if it proves each element of the offense charged beyond a reasonable doubt.

***Commonwealth v. Poland***, 26 A.3d 518, 521 (Pa. Super. 2011) (citation omitted).

Appellant was convicted of criminal conspiracy to commit persons not to possess firearms pursuant to 18 Pa.C.S. §§ 903(a)(1) and 6105(a), which provide, in relevant part, as follows.

**§ 903.  Criminal conspiracy**

**(a) Definition of a conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime….

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.--**

> (1)  A person who has been convicted of an offense enumerated in subsection (b) … shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. §§ 903(a)(1) and 6105(a)(1).

"[T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Murphy**, 795 A.2d 1025, 1037-38 (Pa. Super. 2002) (quotations omitted).  The Commonwealth and Appellant agree that, in order for this conviction to stand, the Commonwealth had to prove beyond a reasonable doubt that Appellant and Maurice[4] entered into an agreement.  Appellant argues that there is no evidence that Appellant and Maurice entered into any agreement to have Matthew possess the AK-47. Appellant's Brief at 19-21.

---

[4] The Commonwealth could sustain its burden by proving either that Appellant sold the AK-47 to Maurice so that Matthew could possess it or that Appellant sold the AK-47 to Matthew.  Because we conclude that the Commonwealth sustained its burden as to Maurice, we need not consider any alleged agreement to sell to Matthew.

In considering this issue, "we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013) (quotations omitted).

> [A]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. It is improper for this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (quotation omitted).

"A conspiracy is almost always proved through circumstantial evidence. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (quotations and citations omitted).

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish

- 7 -

a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Id*. (citations and quotations omitted).

Instantly, Appellant testified that he sold the AK-47 to Maurice because he "needed the money." N.T., 3/6/2014, at 187. Moreover, Appellant knew that Maurice and Matthew used guns together. Specifically, Appellant testified that he saw Matthew with a firearm "a few times" prior to 2011 "and that was with [Maurice] at the rifle range." *Id*. at 191. Additionally, Trooper Norton testified that Appellant told him that, "when [Maurice] was present at the range, [Matthew] would use firearms that belonged to [Maurice]." *Id*. at 98.

This evidence must be considered together with the missing receipt for the AK-47, and the conclusions a jury could infer from its absence. Appellant testified that consistent with his common practice, when he sold the AK-47 to Maurice he gave Maurice "a receipt written on a piece of paper." *Id*. at 189. Moreover, during a search of Maurice's house, Maurice provided the troopers with a receipt, signed by Appellant, which confirmed the sale of a .17-caliber rifle from Appellant to Maurice in 2009. During the execution of the search warrant, Trooper Hess found receipts dating back to the mid-1960s. However, there was no receipt for the AK-47. Furthermore, Appellant testified that Maurice interacted with Appellant at the firing range

and purchased at least one firearm from Appellant. Despite this evidence, Maurice testified that prior to June 29, 2011, the date on which the AK-47 was recovered from Matthew, Maurice had never "met or been introduced to" Appellant. *Id*. at 111-112.

We hold that this testimony establishes a "web of evidence" whereby the jury could reasonably conclude that Appellant and Maurice entered into an agreement that Appellant would sell the AK-47 to Maurice so that Matthew could possess it. Notably, the missing receipt in combination with Maurice's testimony that he had never met Appellant despite all evidence to the contrary, when viewed in the light most favorable to the Commonwealth as the prevailing party, is sufficient evidence to establish a clandestine agreement between Appellant and Maurice to place the AK-47 in Matthew's possession.

We now turn to the analysis of the other element of this crime, whether there was a shared criminal intent. Specifically, we must determine whether Appellant knew that Matthew was a person not to possess a firearm.[5]

> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators

---

[5] Matthew's juvenile probation officer, Matthew Crouse, testified that in 2002, Matthew was adjudicated delinquent for the felony of burglary. It is undisputed that a juvenile adjudication for burglary disqualifies that individual from possessing a firearm in Pennsylvania.

committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action. The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

***Commonwealth v. Wayne***, 720 A.2d 456, 463-64 (Pa. 1998) (internal citations and quotations omitted).

It is Appellant's position that the Commonwealth had to prove that when Appellant transferred the AK-47 to Maurice, Appellant knew that Matthew was a person not to possess a firearm because he had been adjudicated delinquent for burglary. Appellant further argues that not only did the Commonwealth fail to prove that Appellant knew Matthew was a person not to possess a firearm, but also that the trial court's instruction to the jury in this regard was reversible error.

The Commonwealth concedes that Appellant did not know the true reason for Matthew's disqualification from possessing a firearm.[6] However, the Commonwealth argues that Appellant did not need to know the true

---

[6] The Commonwealth notes that "nothing in the record indicates that [Appellant] was aware of [Matthew's] prior adjudication for [burglary]." Commonwealth's Brief at 16.

reason for Matthew's disqualification, but only needed to believe that Matthew was not permitted to possess a firearm lawfully.

The Commonwealth had to prove that at the time Appellant sold the firearm to Maurice he was aware that Matthew was not permitted to possess a firearm. Whether he held that belief for the correct reason, the juvenile adjudication for burglary, or he mistakenly believed that it was Matthew's time spent in a mental institution that disqualified him, is not relevant; the issue is Appellant's state of mind at the time he entered into the agreement with Maurice. Through the following testimony, the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant believed that Matthew could not lawfully possess a firearm.

Appellant told Trooper Norton that

he was aware that [Matthew] had an incident or was involved in an incident earlier in his life where [Matthew] pointed a firearm at some police officers that had responded to the house. He had also stated that shortly after that incident with the police he knew that [Matthew] was sent away to a mental institution.

And from these items -- from these bits of information, [Appellant] just assumed [Matthew] probably wasn't allowed to have a firearm.

N.T., 3/6/2014, at 77.

With respect to this testimony, Appellant contends that the incident where Matthew shot at police occurred **after** Appellant transferred the AK-47 to Maurice. Thus, Appellant argues that he could not have possessed the

- 11 -

state of mind required at the time he sold the firearm to Maurice. Appellant's Brief at 35.

With respect to the incident where Matthew shot at police, Trooper Norton testified that Appellant told him it occurred two to three years prior to the July 1, 2011 interview of Appellant by police. N.T., 3/6/2014, at 96. However, that comment was immediately followed by testimony that Appellant told police that "at one point [Matthew] had been sent away to a mental institution…. [and that occurred while they were] in [high] school because [Matthew] had left school for that purpose." *Id*. at 96-97.

Based upon this testimony, viewed in the light most favorable to the Commonwealth as the prevailing party, the jury could have believed that Appellant's knowledge about Matthew's mental state, and disqualification from possessing a firearm, arose while the two were in high school together between 1999 and 2003.[7] Accordingly, Appellant's argument as to the timing of Appellant's knowledge is without merit.

We now turn to Appellant's final contention with respect to his state of mind, which concerns the jury instruction. Appellant's Brief at 26-28.

---

[7] Appellant argues that the evidence establishes that the AK-47 was transferred in 2005. Appellant's Brief at 46. However, Trooper Norton testified that Appellant told him that he "had [the AK-47] for maybe two years." N.T., 3/6/2014, at 78. Thus, although there was testimony to the contrary, if the jury believed Trooper Norton's testimony, Appellant could have transferred the AK-47 as late as 2006.

[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (quotation omitted).

In his proposed points for charge, Appellant suggested that the trial court instruct the jury that the commonwealth was required to prove "[Matthew] had been adjudicated delinquent by a Court of this Commonwealth for burglary, that [Appellant] knew at the time of the agreement with the other party that the other party was prohibited from possessing … a firearm because of such adjudication for burglary[.]" Proposed Points for Charge of Defendant, 9/30/2013, at 4.

The trial court did not include this language in its jury instructions, noting that "[t]he elements of the offense doesn't [*sic*] specify that [Appellant] has to know the exact nature of the disqualification, only that he was disqualified." N.T. 3/7/2014, at 32. Thus, the trial court instructed the jury that it must find "that [Appellant] conspired with Maurice Connor … to facilitate that person prohibited by law from possessing … a firearm…." *Id*. at 30.

Appellant contends that the instruction provided "falls dramatically short of … due process." Appellant's Brief at 28. Our Supreme Court's recent

decision in **Commonwealth v. Knox**, 105 A.3d 1194 (Pa. 2014) is instructive. The Supreme Court analyzed a defendant's "accountability for the illegal possession of a firearm by another, under accomplice-liability theory." **Id**. at 1195.[8] In that case, the underlying offense was firearms not to be carried without a license. The prosecution of Knox was premised on Knox being an accomplice to his brother's possessing a firearm when his brother was not licensed to do so. The Court held that the proper inquiry is whether Knox, "acting with the intent to promote or facilitate his brother's unlicensed carrying of a concealed firearm, solicited his brother to commit such an offense…". **Id**. at 1197.

In this case, the jury instruction tracks the intent language approved by our Supreme Court in **Knox**. Accordingly, the trial court did not abuse its discretion in the phrasing of the jury instruction; thus, Appellant is not entitled to relief on this basis.

We next consider a series of arguments with respect to the timing of the offense that occurred. First, Appellant contends that because the Commonwealth could not fix the date of the transfer of the AK-47 from Appellant to Maurice "with reasonable certainty," Appellant's judgment of

---

[8] We are cognizant that "[a]ccomplice liability and conspiracy are not one and the same crime. Conspiracy requires proof of an additional factor which accomplice liability does not, namely the existence of an agreement." **Murphy**, 795 A.2d at 1038. We addressed the existence of an agreement *supra*.

sentence must be vacated pursuant to ***Commonwealth v. Devlin***, 333 A.2d 888 (Pa. 1975). Appellant's Brief at 38.

On June 6, 1972, Devlin was charged with sodomizing a twenty-two year old man, who had the "mental ability of a first or second grade child," between February 1971 and April 1972. Devlin argued that the Commonwealth "had not fixed the date of the crime with sufficient particularity, and thus the charge was impossible to defend." ***Id***. at 890. The Supreme Court agreed and reversed Devlin's judgment of sentence; however, it noted that "leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused." ***Id***. at 892. ***Devlin*** and its progeny are limited generally to sexual assault cases where the criminal information charges the accused with a course of conduct over a period of time. Thus, we conclude that the principles of ***Devlin*** are inapplicable to this case.

Moreover, Pennsylvania Rule of Criminal Procedure 560 provides that the information shall contain "the date when the offense is alleged to have been committed if the precise date is known … provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient." Pa.R.Crim.P. 560(A)(3). Here, the Commonwealth alleged that the transfer occurred between "October 19,

2005 (*sic*) and June 29, 2011." Trial Court Memorandum Order, 3/28/2013, at 8. Accordingly, the criminal information at issue complies with the rule, and Appellant is not entitled to relief on this basis.

Appellant further argues that because the Commonwealth cannot fix an exact date on this transfer, the statute of limitations may have expired prior to Appellant's prosecution. Appellant's Brief at 39-43.[9] Appellant argues that the statute of limitations for criminal conspiracy is two years[10] and expired two years from the date Appellant sold the AK-47 to Maurice in 2005. Appellant's Brief at 46.[11] Thus, according to Appellant, the Commonwealth had to bring these charges prior to 2007. *Id*. We conclude that Appellant has misinterpreted the law.

> As a general rule, prosecutions must be commenced within two years after the crimes have been committed. There is, however, an exception to this rule where conspiracy is the crime.

---

[9] Certain dates are not in dispute: 1) the date that Appellant originally purchased the AK-47, October 19, 2004; 2) the date that the AK-47 was found with Matthew, June 29, 2011; and, 3) the date that the prosecution of Appellant commenced, October 7, 2011. *See* 42 Pa.C.S. § 5552(e) ("[A] prosecution is commenced either when an indictment is found or an information under section 8931(b) (relating to indictment and information) is issued, or when a warrant, summons or citation is issued, if such warrant, summons or citation is executed without unreasonable delay.").

[10] 42 Pa.C.S. § 5552(a) ("Except as otherwise provided in this subchapter, a prosecution for an offense must be commenced within two years after it is committed.").

[11] As set forth *supra*, it is unclear whether Appellant sold the AK-47 to Maurice in 2005 or 2006. In light of our analysis *infra*, the exact date does not matter.

> For purposes of the statute of limitation, the crime of conspiracy is a continuing offense. And any conspiracy that is renewed by repetitions may be prosecuted at any time within two years after the commission of the last offense.

**Commonwealth v. Volk**, 444 A.2d 1182, 1187 (Pa. Super. 1982) (citations omitted).

"Criminal conspiracy … does not terminate until the conspiracy ends, at which point the time starts to run." **Commonwealth v. McSloy**, 751 A.2d 666, 669 (Pa. Super. 2000). Additionally, "[p]ossession is ongoing conduct, not a temporally limited act. As long as one is in unlawful possession of a firearm, one is committing an offense." **Commonwealth v. Gross**, 101 A.3d 28, 35 n.5 (Pa. 2014).

Instantly, Appellant's conviction was for conspiracy to commit persons not to possess a firearm; thus, the object of the conspiracy was for Matthew to possess the firearm. Accordingly, so long as Matthew possessed the firearm, the conspiracy was not terminated. Here, Matthew was found in possession of the firearm on June 29, 2011, and the prosecution commenced on October 7, 2011, well within the two-year statute of limitations. Thus, Appellant is not entitled to relief based upon the statute of limitations.

Finally, Appellant contends the trial court considered an impermissible sentencing factor, "evidence from a non-victim as to the harm suffered by a separate incident." Appellant's Brief at 49. While Appellant suggests that this issue raises a "substantial question," his argument focuses on the trial

court's decision to permit testimony at sentencing from the family of Kyle Pagerly and a representative of law enforcement. *Id*. at 48.

The Commonwealth argues that Appellant has waived this challenge to the discretionary aspects of his sentence, because Appellant's brief does not include a statement pursuant to Pa.R.A.P. 2119(f). Commonwealth's Brief at 22-23. The Commonwealth also suggests that any issues with respect to sentencing are waived because Appellant did not include a copy of the sentencing transcript in the certified record. *Id*. at 24 n.4.

Prior to sentencing, Appellant filed a petition to limit testimony at the sentencing hearing. That petition requested that the Commonwealth not be permitted to introduce testimony with respect to Pagerly's death. In considering Appellant's petition, the trial court acknowledged that evidence of Pagerly's death "would have been highly prejudicial to a jury's analysis of the elements of the crimes for which [Appellant] was charged." Trial Court Opinion, 4/22/2014, at 2. However, it concluded such testimony, if presented at sentencing, would not sway the trial court. Thus, it permitted the Commonwealth to present a maximum of two witnesses to testify for 10 minutes each at sentencing.

> In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a

sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.

***Commonwealth v. Bethea***, 379 A.2d 102, 106-07 (Pa. 1977).

Instantly, this Court is unable to review the issue of whether the trial court considered impermissible factors at sentencing because Appellant did not request or ensure inclusion of the transcript from that hearing in the certified record.

> [W]ell-settled Pennsylvania law makes clear "an appellate court is limited to considering only the materials in the certified record when resolving an issue." ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*)[]. Where the appellant has not made the transcript of the proceedings at issue a part of the certified record, we have said:
>
> > With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P. 1911(a)....

***Commonwealth v. Houck***, 102 A.3d 443, 456 (Pa. Super. 2014).

Thus, regardless of whether this issue challenges the discretionary aspects of Appellant's sentence or the decision of the trial court in permitting this testimony at sentencing, we conclude it has been waived for appellate review because Appellant has not provided this Court the transcript from the sentencing hearing.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Shogan joined.

Judge Wecht files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 12/8/2015