IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 28 MAP 2012 |
| | : |
| Appellant | : Appeal from the order of the Superior Court |
| | : at No. 2006 EDA 2010 dated 07/13/2011 |
| | : which affirmed the order of the Monroe |
| v. | : County Court of Common Pleas, Criminal |
| | : Division, at No. CP-45-CR-0000045-2010 |
| | : dated 07/15/2010. |
| EMILY JOY GROSS, | : |
| | : ARGUED:   October 17, 2012 |
| Appellee | : |

## OPINION

**MR. JUSTICE EAKIN**                    **DECIDED:   September 24, 2014**

The Superior Court affirmed the trial court's dismissal of this criminal case for improper venue.   Upon review, we conclude this was error, reverse the Superior Court's order, and remand to the trial court for further proceedings.

Emily Gross and Daniel Autenrieth began a romantic relationship in early 2009. On May 4, 2009, Autenrieth's estranged wife filed a protection from abuse (PFA) petition against him in Northampton County where she lived.   The court issued a temporary PFA order the same day prohibiting Autenrieth from having contact with his wife or children and evicting him from the marital residence.   The same day, deputies from the Northampton Sheriff's office went to Autenrieth's residence (also in Northampton County) to serve the temporary PFA order and to transfer custody of the children to Autenrieth's wife.   Gross was present, babysitting the children, and a deputy served the order on her

as the adult in charge of the residence.   The deputy incorrectly told Gross the temporary PFA order prohibited Autenrieth from possessing firearms.   Another deputy explained the PFA order's terms to Autenrieth over the phone.   On May 18, 2009, a final PFA order was issued, which prohibited Autenrieth from possessing firearms.

Gross routinely stayed overnight at Autenrieth's residence, but she lived and worked in New Jersey.   On May 21, 2009, she attempted to acquire a New Jersey firearm permit but was informed the process would take several months.   On May 29, 2009, Gross obtained a Pennsylvania driver's license using Autenrieth's address; within hours, Gross and Autenrieth went to a Berks County store, where Gross used her new license to buy a 9 millimeter handgun.   Later, at his residence, Autenrieth showed Gross how to use the gun, offered to clean it for her, then put the gun in its box and stored it and its ammunition above his washer and dryer.   This was the last time Gross saw the gun, though a few days later she learned Autenrieth had taken the gun, fired it with a friend, and replaced the ammunition used; Gross made no objection.

On June 7, 2009, Autenrieth took the gun, went to his estranged wife's house, and kidnapped his nine-year-old son at gunpoint.   Police were called, Autenrieth fled, and the chase went on for 40 miles, ending with a shoot-out in Monroe County in which Autenrieth killed one Pennsylvania State Trooper and wounded another before being shot to death.

A criminal complaint was filed in Monroe County charging Gross with criminal conspiracy, 18 Pa.C.S. § 903(a); firearms not to be carried without a license, id., § 6106(a)(1) (co-conspirator); possession of firearm prohibited, id., § 6105(a)(1) (accomplice); and lending or giving of firearms prohibited, id., § 6115(a) (accomplice).   A preliminary hearing was held January 15, 2010, before a Monroe County magisterial

district judge. Among other motions, Gross moved for dismissal of the case for "lack of jurisdiction[.]" N.T. Preliminary Hearing, 1/15/10, at 10. Specifically, Gross argued "there[ was] no jurisdiction in [the magisterial] district or, in fact, in Monroe County to hear these charges." Id. The judge denied the motion, id., at 13, and bound the charges over to the Monroe County Court of Common Pleas, id., at 63-64.

On March 3, 2010, Gross filed an omnibus pre-trial motion, which included a "Motion to Dismiss or, in the alternative, Transfer for Improper Venue."[1] A hearing on this motion was held May 24, 2010. The Commonwealth did not introduce evidence other than the preliminary hearing transcript and a license to carry firearm certification regarding Autenrieth. Both parties filed briefs to address the venue issue. After considering the evidence and the parties' arguments, the trial court found Gross's "Motion to Dismiss for Improper Venue" dispositive and dismissed the case July 15, 2010, for improper venue. The trial court addressed this motion only; it did not consider Gross's alternative motion to transfer for improper venue, nor did it address the remaining motions contained in her omnibus pre-trial motion.

Venue was held improper based on a lack of factual connection to Monroe County.[2] Specifically, both the trial court and the Superior Court concluded the evidence

---

[1] The omnibus motion consisted of a Motion for Bill of Particulars; Motion to Compel Pretrial Discovery and Inspection; Motion to Dismiss or, in the alternative, Transfer for Improper Venue; Motion for a Change of Venue or Venire to Avoid Prejudicial Pretrial Publicity; Motion to Quash Criminal Complaint or Return of Transcript, and/or Petition for Writ of Habeas Corpus; and Motion for Recusal/Appointment of Out-of-County Judge. Gross's Omnibus Pretrial Motion, 3/3/10, at 4-18.

[2] In its Rule 1925(a) opinion, the trial court reiterated dismissal was solely because Monroe County was not a county of proper venue, and not based on any allegation of (continued…)

showed the alleged conspiracy was not reached in Monroe County, Gross committed no acts in furtherance of the conspiracy in Monroe County, and the conspiracy ended in Northampton County. The Commonwealth argues the lower courts erred in finding improper venue, noting all charges filed against Gross were based on conspiracy and accomplice liability and her co-conspirator, Autenrieth, committed an overt act in Monroe County. Alternatively, the Commonwealth contends that even if venue was improper, the trial court should have transferred the proceedings instead of dismissing them.

Jurisdiction relates to the court's power to hear and decide the controversy presented. Commonwealth v. Bethea, 828 A.2d 1066, 1074 (Pa. 2003) (citation omitted). "[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." Id. Thus, there is no question the Monroe County Court of Common Pleas had jurisdiction to hear this case. See 42 Pa.C.S. § 931(a). Venue, on the other hand, refers to the convenience and locality of trial, or "the right of a party to have the controversy brought and heard in a particular judicial district." Bethea, at 1074 (citation omitted). Venue assumes jurisdiction exists and it "can only be proper where jurisdiction already exists." Id., at 1074-75 (citation omitted). Even though all common pleas courts may have jurisdiction to resolve a case, such should only be exercised in the judicial district in which venue lies. See id., at 1075 ("Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction."). "Venue in a criminal action properly belongs in the place where the crime occurred." Id. (citation omitted).

---

(…continued)
pre-trial publicity or prejudice that would inhibit Gross from receiving a fair and impartial trial there. See Trial Court Opinion, 7/28/10, at 2-3 (citations omitted).

Our criminal procedural rules provide a system in which defendants can seek transfer of proceedings to another judicial district due to prejudice or pre-trial publicity. Such decisions are generally left to the trial court's discretion. See Commonwealth v. Chambers, 685 A.2d 96, 103 (Pa. 1996) (citation omitted). Venue challenges concerning the locality of a crime, on the other hand, stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

The burden of proof in relation to venue challenges has not been definitively established in our decisional law or our criminal procedural rules. Because the Commonwealth selects the county of trial, we now hold it shall bear the burden of proving venue is proper — that is, evidence an offense occurred in the judicial district with which the defendant may be criminally associated, either directly, jointly, or vicariously. Although our sister states are not in agreement as to the requisite degree of proof,[3] we find the Commonwealth should prove venue by a preponderance of the evidence once the defendant properly raises the issue.[4] Venue merely concerns the judicial district in

---

[3] Compare Bradley v. State, 533 S.E.2d 727, 730 (Ga. 2000) (prosecution's burden to prove venue beyond reasonable doubt (citation omitted)), with Morris v. State, 409 N.E.2d 608, 610 (Ind. 1980) (proper venue must only be proven by preponderance of evidence (citation omitted)).

[4] Accord Evans v. State, 571 N.E.2d 1231, 1233 (Ind. 1991) (requiring state prove venue by preponderance of evidence and noting circumstantial evidence may be sufficient (citation omitted)); State v. Allen, 293 N.W.2d 16, 20 (Iowa 1980) (explaining venue is not essential element of offense, not jurisdictional, and subject to waiver; thus, it may be (continued…)

which the prosecution is to be conducted; it is not an essential element of the crime, nor does it relate to guilt or innocence. Because venue is not part of a crime, it need not be proven beyond a reasonable doubt as essential elements must be. Accordingly, applying the preponderance-of-the-evidence standard to venue challenges allows trial courts to speedily resolve this threshold issue without infringing on the accused's constitutional rights. Like essential elements of a crime, venue need not be proven by direct evidence but may be inferred by circumstantial evidence. See, e.g., Commonwealth v. Cooper, 941 A.2d 655, 662 (Pa. 2007) (citation omitted). Appellate review of venue challenges, similar to that applicable to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error. See, e.g., Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010).

At the hearing on the omnibus motion filed by Gross, the Commonwealth submitted the preliminary hearing transcript, supporting its belief that venue in Monroe County was proper. N.T. Pretrial Hearing, 5/24/10, at 3-4, 14. Gross only offered legal argument in response; thus, the Commonwealth's evidence was uncontradicted and constituted the entire factual record relative to Gross's venue challenge. The trial court held Gross could not be prosecuted in Monroe County because the conspiracy between Gross and Autenrieth was reached and completed in Northampton County and

---

(…continued)
adequately established by preponderance of evidence); State v. Valentine, 506 S.W.2d 406, 410 (Mo. 1974) (reasoning that "venue is not an integral part of a criminal offense and need not be proven beyond a reasonable doubt or by direct evidence, but it may be inferred from all the evidence"). See generally Annotation, Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond Reasonable Doubt, 67 A.L.R.3d 988 (1975 & Supp. 2013) (collecting cases).

Autenrieth's possession of the firearm in Monroe County did not constitute an overt act in furtherance of the criminal agreement. In this, the court misperceived the nature of the charges brought.

The material elements of conspiracy are: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." Commonwealth v. Spotz, 756 A.2d 1139, 1162 (Pa. 2000) (citation omitted). An "overt act" means an act done in furtherance of the object of the conspiracy. See 18 Pa.C.S. § 903(e); Commonwealth v. Weimer, 977 A.2d 1103, 1106 (Pa. 2009). Additionally, in connection with questions of venue, this Court noted "a prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of the unlawful combination." Commonwealth v. Fithian, 961 A.2d 66, 78 (Pa. 2008) (citing Commonwealth v. Thomas, 189 A.2d 255, 258 (Pa. 1963)).

The record is sufficient to show a criminal conspiracy between Autenrieth and Gross, under which Gross would purchase a firearm for the purpose of providing Autenrieth with access to a gun he was otherwise prohibited from possessing. Because of this criminal agreement, Autenrieth was able to use the firearm on two occasions, including the day he took the gun and used it in Monroe County. The trial court determined the conspiracy agreement ended May 29, 2009, at the time Gross left the firearm with Autenrieth at his residence in Northampton County. See Trial Court Opinion, 7/15/10, at 15. However, the trial court failed to appreciate that the object of the conspiracy articulated by the charges was to provide Autenrieth with unlimited possession and unconditional access to a firearm, and such was not completed or

terminated May 29, 2009, but continued as long as Gross allowed Autenrieth to possess her gun.[5]  See 18 Pa.C.S. § 903(g)(1) ("[C]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired[.]"); Commonwealth v. Evans, 413 A.2d 1025, 1028 (Pa. 1980) ("The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members." (quotation marks and citation omitted)).  Gross did not object or withdraw her authorization.  Autenrieth's taking the firearm and carrying it constituted the overt act, and that possessory act did not cease when he crossed into Monroe County.  Accordingly, the trial court erred in dismissing the conspiracy charges, as the record was sufficient to establish Gross, as co-conspirator, could be found vicariously liable for Autenrieth's possession of the firearm, in Monroe County, and thus, could be prosecuted in that county.[6]

The trial court also erred in finding dismissal was warranted for the counts charging Gross as an accomplice in the crimes of illegal possession of a firearm and lending or giving a firearm.  The trial court found Gross could not be an accomplice in Monroe County because Autenrieth, not Gross, possessed the gun there.  See Trial Court Opinion, 7/15/10, at 11-12.  Also, both the trial court and the Superior Court concluded Gross could not be charged as an accomplice because "there is no evidence that she

---

[5] Possession is ongoing conduct, not a temporally limited act.  As long as one is in unlawful possession of a firearm, one is committing an offense.  See, e.g., United States v. Hull, 456 F.3d 133, 146 (3d Cir. 2006) (Ackerman, J., concurring in part and dissenting in part) (citation omitted).

[6] All charges against Gross allege responsibility for Autenrieth's illegal possession of the firearm; Gross was not charged with any of the other crimes committed by Autenrieth.

intended to aid or promote Autenrieth's shootout with the police." Commonwealth v. Gross, No. 2006 EDA 2010, unpublished memorandum at 7 (Pa. Super. filed July 13, 2011) (citing Trial Court Opinion, 7/15/10, at 11). This factual statement may be true, but it is irrelevant, reflecting a misapprehension of the charges filed. Gross was never charged as an accomplice in the shooting; rather, she was charged as an accomplice in the illegal possession of a firearm, and the evidence offered was sufficient to prove she could be convicted as an accomplice to such illegal possession in Monroe County.

"An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense." Commonwealth v. Cox, 686 A.2d 1279, 1286 (Pa. 1996) (citations omitted). There is no minimum amount of assistance or contribution requirement, for "[i]t has long been established … that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony." Commonwealth v. Flowers, 387 A.2d 1268, 1270 (Pa. 1978) (emphasis in original). Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity. See Commonwealth v. Pierce, 263 A.2d 350, 351 (Pa. 1970) (where assistance "'is rendered to induce another to commit the crime and actually has this effect, no more is required'" (citation omitted)). Absence or presence at the scene and the participant's role in the complicity are not dispositive of whether accomplice liability exists. See Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa. 2004) ("[A] defendant cannot be an accomplice simply based on evidence that he … was present at the crime scene." (citation omitted)). Accomplice

liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person. See 18 Pa.C.S. § 306.

Because Autenrieth was present with the gun in Monroe County, and Gross aided Autenrieth's illegal possession of that firearm, Gross could be found liable as an accomplice for Autenrieth's illegal possession wherever he was, including Monroe County. Accordingly, we conclude the Commonwealth proved by a preponderance of the evidence that Gross could be prosecuted under all criminal charges in Monroe County. The trial court's finding to the contrary was erroneous.

Further, even if venue had been improper in Monroe County, the record does not warrant dismissal for that reason alone. See Pa.R.Crim.P. 109 ("A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules[.]"); see also Commonwealth v. Zook, 615 A.2d 1, 6 (Pa. 1992) (interpreting substantially similar predecessor to Rule 109, stating "this Rule clearly eschews the application of per se remedies for technical violations, and demands a showing of prejudice by the defendant before a dismissal of prosecution is warranted[, which] must be beyond the inherent prejudice of being subjected to a criminal prosecution").

As the Commonwealth notes, no provision in our criminal procedural rules permits dismissal as a remedy for improper venue. To the contrary, our rules repeatedly speak to transferring cases to another judicial district when improper venue is determined. See, e.g., Pa.R.Crim.P. 130, 134, 555, 584. As "[v]enue is predominantly a procedural matter," Bethea, at 1074 (citations omitted), and "pertains to the locality most convenient to the proper disposition of a matter," id., at 1074-75, dismissal is disproportionate and

unjust where a court merely finds another judicial district provides a more appropriate forum. Our rules promote transfer, not dismissal, and Gross brought not only a motion to dismiss, but "in the alternative" a motion to transfer for improper venue. The trial court did not transfer the case even though it expressly determined Northampton or Berks County were proper venues. See Trial Court Opinion, 7/15/10, at 23. On this separate basis, the trial court also erred in dismissing the charges filed.

In light of the foregoing, we conclude the trial erred in finding venue improper in Monroe County and in dismissing the case. Order reversed. Case remanded to the trial court for consideration of any unaddressed issues. Jurisdiction relinquished.

Former Justice Orie Melvin did not participate in the consideration or decision of this case.

Messrs. Justice Saylor and Baer, Madame Justice Todd and Mr. Justice McCaffery join the opinion.

Mr. Chief Justice Castille files a concurring opinion.