J-A04017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICHARD E. HARRIS | : | No. 825 EDA 2021 |

Appeal from the Order Entered April 14, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002117-2020

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.: **FILED MAY 23, 2022**

The Commonwealth appeals from the order granting Appellee Richard

E. Harris's motion to transfer venue from Bucks County to Philadelphia. The

Commonwealth argues that the trial court erred in concluding that there was

insufficient evidence to demonstrate that Appellee participated in a conspiracy

in Bucks County. We affirm.

Briefly, the trial court summarized the relevant facts as follows:

The charges in this case involve three sales of ketamine from
Appellee to [an individual named John] Stevenson. [All three]
sales occurred in Philadelphia County. Thereafter, police executed
a search warrant at Appellee's house in Philadelphia County[,]
which resulted in additional criminal charges. After the first sale
on December 23, 2019, Stevenson traveled to Parx Casino in
Bucks County where he sold ketamine to an undercover police
officer. This is the only criminal conduct that occurred in Bucks
County in this case. The parties agree Appellee never personally
entered Bucks County during the times at issue. All criminal
activity he engaged in directly occurred in Philadelphia County.

Trial Ct. Op., 8/31/21, at 1-2.

The Commonwealth originally filed criminal charges against Appellee in Philadelphia. However, those charges were later withdrawn and re-filed in Bucks County. At the preliminary hearing, the Commonwealth presented Stevenson, who testified that he had purchased drugs from Appellee on December 23, 2019, January 16, 2020, and January 28, 2020. *See* N.T. Prelim. Hr'g, 6/24/20, at 6, 9, 20. After the sale on December 23, 2019, Stevenson testified that he traveled to Bucks County and sold ketamine to an undercover officer at Parx Casino. *Id.* at 6.

With respect to his association with Appellee, Stevenson testified as follows:

> [The Commonwealth]: You purchased from [Appellee] repeatedly, correct?
>
> [Stevenson]: Yes.
>
> [The Commonwealth]: Did you and [Appellee] ever discuss where your ketamine went?
>
> [Stevenson]: No.
>
> [The Commonwealth]: Why?
>
> [Stevenson]: Because it was my business only, my customers.
>
> [The Commonwealth]: Was it understood that you were selling ketamine?
>
> [Stevenson]: Yes.

*Id.* at 11. Stevenson also indicated that Appellee had "fronted" him drugs during the January sales because he did not have enough cash to pay. *Id.* at 18, 21.

- 2 -

On cross-examination, Stevenson further testified as follows:

[Appellee's counsel]: How many times prior to the incident you discussed here today on December 23, 2019, had you purchased ketamine from [Appellee]?

[Stevenson]: About five times.

[Appellee's counsel]: So total, just correct me if I am wrong, you bought from him approximately five times before December 23rd, correct?

[Stevenson]: Correct.

                    *       *       *

[Appellee's counsel]: Let me ask you this: You then take that ketamine and you are selling it to other people on your own, correct?

[Stevenson]: Correct.

[Appellee's counsel]: And to quote you, you said "You didn't discuss your business where the ketamine went with [Appellee]," correct?

[Stevenson]: Correct.

[Appellee's counsel]: Is it fair to say that when you sold it to other people, that you made some profit for yourself, correct?

[Stevenson]: Correct.

[Appellee's counsel]: At any point in time, did you ever share any of that profit with [Appellee]?

[Stevenson]: No.

[Appellee's counsel]: Every single time when you purchased from [Appellee], that was done in Philadelphia County, correct?

[Stevenson]: Correct.

[Appellee's counsel]: On December 23, 2019, when you went [to] Parx Casino to the parking lot to sell ketamine, did you tell [Appellee] in advance of that, hey, I am going to [] Bensalem or up in Bucks County to sell this to someone?

[Stevenson]: No.

[Appellee's counsel]: You never shared any proceeds with him, did you?

[Stevenson]: No.

[Appellee's counsel]: Did you two ever go together on any kind of buys where you two bought together from someone?

[Stevenson]: No.

[Appellee's counsel]: Did you ever go together to sell together to anyone?

[Stevenson]: No.

[Appellee's counsel]: He was simply someone, is it fair to say, who was supplying you and then you would end up supplying to other people, correct?

[Stevenson]: Correct.

*Id.* at 24, 26-27 (some formatting altered).

On July 20, 2020, the Commonwealth filed a criminal information charging Appellee with multiple counts of possession with intent to deliver (PWID), possession of a controlled substance, criminal use of a communication facility, and aggravated assault, and one count each of conspiracy to commit PWID, resisting arrest, and disarming a police officer.[1]

Prior to trial, Appellee filed a motion to change venue from Bucks County to Philadelphia. Therein, Appellee argued that there was no evidence that he had participated in any criminal activity outside of Philadelphia or that "a

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), 18 Pa.C.S. §§ 7512(a)(18), 2702(a)(6), 903, 5104, and 5104.1(a), respectively.

- 4 -

conspiracy existed between Stevenson and [Appellee that] extended into Bucks County." *See* Mot. for Change of Venue, 8/24/20, at 3-10.

At the motions hearing, the Commonwealth called Stevenson to supplement his preliminary hearing testimony.[2] *See* N.T. Mot. Hr'g, 1/28/21, at 7. Stevenson reiterated that he had purchased drugs from Appellee on multiple occasions and that "it was understood" that Stevenson had been purchasing those drugs for the purpose of resale. *Id.* at 8, 11. Stevenson also indicated that he had used proceeds from his own drug sales to purchase drugs from Appellee. *Id.* at 9. However, on cross-examination, Stevenson again confirmed that Appellee did not participate in any resales, did not benefit monetarily from any resales, and did not have any knowledge of what Stevenson did with the drugs after the initial sales were complete. *Id.* at 14-15.

On April 14, 2021, the trial court granted Appellee's motion to transfer the case to Philadelphia. The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing the Commonwealth's claim.

---

[2] In addition to Stevenson, the Commonwealth presented testimony from Officer Stephan Pekach, who completed the controlled buy with Stevenson in Bucks County. The Commonwealth also called Detective Peter Sarris, a Bucks County detective who obtained the search warrant for Appellee's Philadelphia residence.

On appeal, the Commonwealth raises the following issue: "Did the trial court err in finding that venue was improper in Bucks County?" Commonwealth's Brief at 4.

The Commonwealth argues that "Appellee can be held liable, either through conspiracy or accomplice liability, for [] Stevenson's sale of ketamine in Bucks County. Accordingly, venue is proper in Bucks County as to all charges arising from the same criminal episode, namely, [] Stevenson's arrangement with Appellee to purchase drugs from him for resale." Commonwealth's Brief at 12.

With respect to conspiracy, the Commonwealth argues:

Stevenson routinely purchased drugs from Appellee for the established purpose of later reselling those drugs. The record establishes that Appellee knew he was selling drugs to Stevenson so that Stevenson could later resell those drugs. Stevenson confirmed this fact several times during the preliminary hearing and the venue hearing. The fact that Appellee "fronted" Stevenson drugs without immediate payment on multiple occasions further establishes his conspiratorial liability for the resales, as Appellee relied upon the fact that he would later be paid with the money Stevenson received from those resales. Undoubtedly, a conspiracy may be inferred from this mutually beneficial arrangement.

*Id.* at 16.

The Commonwealth also asserts that Appellee is liable as an accomplice because he "acted with the intent to aid [] Stevenson's resale of his drugs by knowingly providing him with bulk quantities of narcotics for that very purpose." *Id.* at 17. Therefore, the Commonwealth concludes that, regardless of the location where Stevenson resold the drugs that he purchased

from Appellee, Appellee remains liable as both a co-conspirator and an accomplice for PWID. ***Id.*** at 18 (citing ***Commonwealth v. Gross***, 101 A.3d 28 (Pa. 2014) (holding that, although the defendant conspired to purchase a gun for a felon in Monroe County, she could be prosecuted for her co-conspirator's unlawful possession in Northampton County)).

Appellee responds that there is no evidence of a conspiracy. Appellee's Brief at 4. In support, Appellee refers to Stevenson's testimony that Appellee did not participate in any resales, did not benefit monetarily from any resales, and did not have any knowledge of what Stevenson did with the drugs after the initial sales were complete. ***Id.*** at 5-6. Finally, Appellee argues that he is not liable as an accomplice because the Commonwealth did not establish that Appellee had the intent to aid in Stevenson's crimes. ***Id.*** at 10. Therefore, Appellee concludes that the trial court properly granted his motion to change venue.

When reviewing a venue challenge, we must consider whether the "trial court's factual findings are supported by the record and its conclusions of law are free of legal error." ***Gross***, 101 A.3d at 34.

Our Supreme Court has explained:

> Even though all common pleas courts may have jurisdiction to resolve a case, such should only be exercised in the judicial district in which venue lies. ***See*** [***Commonwealth v. Bethea***, 828 A.2d 1066, 1075 (Pa. 2003)] ("Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction."). "Venue in a criminal action properly belongs in the place where the crime occurred." ***Id.*** (citation omitted).

> Our criminal procedural rules provide a system in which defendants can seek transfer of proceedings to another judicial district due to prejudice or pre-trial publicity. Such decisions are generally left to the trial court's discretion. Venue challenges concerning the locality of a crime, on the other hand, stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

> . . . Because the Commonwealth selects the county of trial, . . . [the Commonwealth bears the] burden of proving venue is proper—that is, evidence an offense occurred in the judicial district with which the defendant may be criminally associated, either directly, jointly, or vicariously. . . . [T]he Commonwealth should prove venue by a preponderance of the evidence[.]

*Id.* at 33 (some citations omitted).

Our Supreme Court has held that "a prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of the unlawful combination." *Commonwealth v. Fithian*, 961 A.2d 66, 78 (Pa. 2008) (citation omitted).

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S. § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the

- 8 -

defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Dunkins*, 229 A.3d 622, 633 (Pa. Super. 2020) (citation omitted and formatting altered), *aff'd on other grounds*, 263 A.3d 247 (Pa. 2021), *cert. denied*, 2022 WL 1131429 (U.S. filed Apr. 18, 2022).

"Circumstances like an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy." *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007).

Further, our Supreme Court has cautioned that "[a] conspiracy cannot be established based only upon mere suspicion and conjecture. Preexisting relationships or mere association of participants, without more, will not suffice to establish a prosecutable criminal conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) (citations omitted and formatting altered). To prove conspiracy, the Commonwealth "must demonstrate the formation of an illicit agreement, the attendant specific shared intent to promote or facilitate the object offense, and an overt act. No level of intimacy or history between actors can replace the elements of the offense." *Id.*

Finally, with respect to accomplice liability, our Supreme Court has explained:

> An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. There is no minimum amount of assistance or contribution requirement, for it has long been established that intent of the parties is a consideration **essential** to establishing the crime of aiding and abetting a felony.

*Gross*, 101 A.3d at 35 (citations omitted and formatting altered).

In *Derr*, the defendant agreed to sell hashish to an undercover agent. *Commonwealth v. Derr*, 462 A.2d 208, 209 (Pa. 1983). Prior to the sale, the defendant collected the money from the agent, then instructed the agent to remain in the car while he entered his supplier's house to purchase the drugs. *Id.* Shortly thereafter, the defendant returned to the vehicle and provided the hashish to the undercover agent. *Id.* Ultimately, the defendant was convicted of PWID and conspiracy. On appeal, our Supreme Court explained that, although there was sufficient evidence that the defendant committed PWID, there was insufficient evidence to establish that there was a conspiracy between the supplier and the defendant. *Id.* at 210. In reaching that conclusion, the Court explained:

> Reviewing the evidence most favorable to the Commonwealth, resolving all reasonable inferences in its favor, the Commonwealth established that the [defendant] entered into an agreement with the undercover agent for the sale of hashish. Thereafter, the [defendant] completed the sales transaction by visiting his supplier. No evidence was offered to show that [the supplier] was

aware of the agreement between the [defendant] and the undercover agent for the purchase of hashish. To impute such knowledge from these facts goes beyond the scope of reasonable inference. Although a person participates in a criminal activity which is the object of the conspiracy, his actions will not support a conviction for conspiracy without proof of an agreement and participation pursuant to that agreement.

*Id.; cf. Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006) (concluding that there was sufficient evidence to sustain the defendant's convictions for conspiracy to commit PWID because "he clearly took an active role in the illicit enterprise" by acting as a lookout and receiving money "from his cohort seller immediately after two sales").

Here, the trial court addressed the Commonwealth's venue claim as follows:

The Commonwealth contends Appellee was either jointly or vicariously liable for the transaction. The Commonwealth has the burden of proving venue by a preponderance of the evidence. Initially, the prosecution maintains Appellee was jointly liable (with Stevenson) for the December 23, 2019 sale of ketamine to an undercover police officer at Parx Casino. As we understand their contention, they allege [that] Appellee and Stevenson were conspirators.

\* \* \*

The prosecution alleges [that] Appellee sold ketamine to Stevenson with the tacit agreement Stevenson would later sell it to another person at Parx Casino in Bucks County. However, at the hearing on the pre-trial motion to transfer venue, Stevenson testified as follows:

[Appellee's counsel]: The bottom line is, he was supplying you with drugs? He being [Appellee], correct?

Stevenson: Yes.

[Appellee's counsel]: And what you did with those drugs afterwards, he had no idea? You didn't tell him. You didn't

- 11 -

share any proceeds with him. You didn't give him any information about that, is that fair to say?

Stevenson: Yes.

[Appellee's counsel]: Okay. The day that you went and sold to an undercover, a person who you know now to be an undercover, a law officer, at [Parx] Casino, on December 23rd of 2019, [Appellee] didn't know you were going there to do that, did he?

Stevenson: No.

N.T. Mot[.] Hr'g, 1/28/21, at 14-15.

The above testimony, which we found to be credible, confirms [that] Appellee had no knowledge of Stevenson's plan to go to Parx Casino and sell ketamine. Additionally, there was no evidence [that] Appellee intended to aid or assist in this sale in any way. There was no evidence of any kind presented that Appellee aided or assisted in the sale, or attempted to aid or assist in the sale, or agreed or intended to aid or assist in the sale.

The prosecution also claims Appellee was vicariously liable for the December 23, 2019 sale of ketamine at Parx Casino as an accomplice of Stevenson. . . .

Again, [as set forth previously, Stevenson's] testimony at the pre-trial hearing on transfer of venue . . . establishes [that] Appellee had no knowledge of Stevenson's plans to sell ketamine in Bucks County. He did not assist or facilitate these plans in any way. He did not agree or attempt to participate in this sale in any way.

Prior to this case being transferred to Bucks County, Appellee was originally charged in Philadelphia County and had a preliminary hearing set in the Philadelphia County court system. Appellee is a resident of Philadelphia County. His residence in Philadelphia County was searched by Philadelphia police and evidence seized which is expected to be introduced at trial in this case. Appellee is alleged to have assaulted a Philadelphia police officer during the search of his home. Appellee was not directly, jointly or vicariously liable for the sale of ketamine at Parx Casino in Bucks County on December 23, 2019. As such, the prosecution has failed to meet its burden of establishing Bucks County as an acceptable venue for prosecution of this matter.

- 12 -

Trial Ct. Op. at 4-6.

Based on our review of the record, we agree with the trial court that the Commonwealth failed to establish that venue was proper in Bucks County. In order to prosecute Appellee in Bucks County, the Commonwealth was required to prove a shared criminal intent between Appellee and Stevenson in connection with Stevenson's "overt act" of selling the drugs to the undercover officer at Parx Casino on December 23, 2018. *See Fithian*, 961 A.2d at 78. However, other than Stevenson's testimony that it was "understood" that he was purchasing drugs from Appellee for resale, there is no evidence that Appellee knew of Stevenson's plan, agreed to participate in his scheme to resell the ketamine at that time, or had a shared criminal intent. *See Derr*, 462 A.2d at 210 (concluding that there was no evidence that the supplier conspired with the defendant to commit PWID by virtue of the supplier's participation in the underlying sale and noting that "[a]lthough a person participates in a criminal activity which is the object of the conspiracy, his actions will not support a conviction for conspiracy without proof of an agreement and participation pursuant to that agreement").

Further, although the Commonwealth emphasizes Stevenson's testimony that Appellee later "fronted" cocaine to Stevenson and that Appellee knew that Stevenson had "someone that needed it," those allegations were based on the sale that occurred in Philadelphia on January 16, 2020. Those facts do not prove that a conspiracy existed at the time of Stevenson's sale in Bucks County on December 23, 2019.

Likewise, with respect to accomplice liability, the Commonwealth was required to prove that Appellee acted "with the intent of promoting or facilitating" PWID and that he aided Stevenson "in either the planning or the commission of the offense." ***Gross***, 101 A.3d at 35. Here, the record reflects that Appellee sold ketamine to Stevenson prior to the December 23, 2019 sale in Bucks County. However, this fact does not establish that Appellee acted with the intent to promote or aid in Stevenson's transfer of those drugs to another person. ***Cf. Commonwealth v. Murphy***, 844 A.2d 1228, 1238 (Pa. 2004) (concluding that the defendant was liable for PWID as an accomplice because the evidence established that he "intended to aid in the drug delivery and then actually aided the deliverer in making that delivery").

Under these circumstances, we agree with the trial court that Appellee's criminal conduct was limited to his possession and sale of the controlled substances, which occurred solely in Philadelphia.[3] Accordingly, the trial court correctly granted Appellee's motion to transfer venue.

_____

[3] We note that, to the extent the Commonwealth relies on our Supreme Court's decision in ***Gross***, that case is distinguishable. In ***Gross***, there was clear evidence that the defendant conspired to provide a gun to her boyfriend, who was prohibited from possessing a firearm. The primary issue on appeal was whether the conspiracy ended when the defendant gave the gun to her boyfriend in Monroe County or whether the conspiracy was still in progress when her boyfriend was later arrested with the gun in Northampton County. ***See Gross***, 101 A.3d at 34-36.

Here, the Commonwealth failed to prove the existence of an agreement or a shared criminal intent between Appellee and Stevenson prior to Stevenson's

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2022

---

sale in Bucks County. Therefore, the **Gross** decision does not affect the outcome of this case.