J-S21038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
QUARTEZ DESHAWN HARDY :
:
Appellant : No. 1503 MDA 2022

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001679-2019

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 13, 2023**

Quartez Deshawn Hardy (Hardy) was charged in 2019 with several

offenses allegedly committed in Dauphin and Cumberland Counties. Following

a jury trial held in the Court of Common Pleas of Cumberland County (trial

court), Hardy was found guilty of four counts – aggravated indecent assault

(18 Pa.C.S. § 3125(a)(2)), false imprisonment (18 Pa.C.S. § 2903(a)), simple

assault (18 Pa.C.S. § 2701(a)(1)), and harassment (18 Pa.C.S. § 2709(a)(4)).

He was sentenced to an aggregate prison term of 5.5 to 12 years and ordered

to register for life as a Tier III sexual offender under the SORNA Act.[1] Hardy

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Sexual Offender Registration and Notification Act (SORNA) requires
sexual offenders to register with the Pennsylvania State Police. **See** 42
Pa.C.S. §§ 9799.14(d)(4), 9799.15(a)(3), 9799.23.

now contends that the evidence was insufficient as to both assault counts, and that the trial court erred in admitting evidence of his criminal conduct in Dauphin County. We affirm.

**I.**

On the Friday evening in question, the victim in this case, Megan Bull (Bull), drove Hardy to a Dauphin County bar where he had worked as a bouncer. Bull left the bar after dropping off Hardy, but she returned later that night to pick him up at the end of his shift.

When Bull came back to the bar, she exchanged text messages with Hardy in which he expressed annoyance that she had departed after dropping him off. The two had been romantically involved, and Hardy was upset because he had told his co-workers that he would be introducing them to "his girl." Trial Transcript, 3/28/2022, at p. 71.

Hardy then came out of the bar and acted aggressively toward Bull and other individuals who were socializing outside. Initially, Hardy walked away from Bull and she lost sight of him. However, a few minutes later, while Bull was speaking to a friend, Hardy grabbed Bull from behind, clutching her arm and her hair. He then pulled her to the vehicle she had driven to the bar and forcefully took the keys from her hand. He also took her cellular phone.

Bull testified that once they were both seated in the vehicle, Hardy slapped her in the face and called her degrading names. He also warned Bull that he would kill her if she continued "to play with him." *Id*. at p. 110.

Hardy drove the two of them to his apartment in Cumberland County. Bull had lived in an apartment just across the street.

When the two arrived at Hardy's apartment, he refused to give Bull her keys and phone. She reluctantly went into his apartment so that she could get those items back. However, once she entered, Hardy did not permit her to leave, physically blocking her from the front door and verbally refusing her requests to go home. The door was bolted shut and Hardy became irate when he saw that Bull was receiving a call from a friend.

Hardy began accusing Bull of having sexual relations with other men, and he touched her vagina with his fingers, ostensibly to confirm his suspicions. Moments later, Hardy appeared to grow remorseful, brandishing a kitchen knife, crying, and stating that he needed psychological treatment for a behavioral disorder.

Bull continued asking for her keys and phone so that she could go home, but Hardy ignored her requests and instead pulled her to the floor, where they engaged in sexual intercourse. Hardy continued to detain Bull in the apartment and she did not leave until several hours later, by which time Hardy had fallen asleep.

Bull contacted her brother to tell him what had happened and he, in turn, called the police. It appeared to Bull's brother that she had been crying and that her cheeks were red, but he did not immediately observe any bruises or signs of injury. The police arranged to speak with Bull in a school parking

lot and she went with her brother's wife. Her initial statement to the investigating officer included no mention of a rape or a sexual assault.

About three hours after giving her first statement, Bull contacted the police again so that she could speak to an officer alone in the interview room of the police station. At this second interview, Bull, for the first time, recounted her allegations that Hardy had digitally penetrated her vagina and then raped her. Photos of Bull taken on that same day showed that she had a swollen face, deep bruises on her arms, a ripped fingernail and a torn dress.

The Commonwealth charged Hardy in Cumberland County with aggravated indecent assault, terroristic threats, false imprisonment, simple assault, harassment, rape and sexual assault. Bull, her brother and the investigating officer later testified at a jury trial held in 2022. According to Bull and her brother, she was assaulted by Hardy, driven to Hardy's apartment without her consent, and then forced into having sexual contact with him, including digital and penile penetration of her vagina.

During Bull's testimony, defense counsel objected to the admission at trial of any evidence concerning Hardy's conduct in Dauphin County (*i.e.*, slapping Bull in the face and grabbing her hair) on the ground that the

proceedings only concerned events transpiring in Cumberland County. The objection was overruled. **See** Trial Transcript, 3/28/2022, at pp. 74-75.[2]

As discussed above, the jury found Hardy guilty of aggravated indecent assault, false imprisonment, simple assault and harassment. He was acquitted of the remaining counts of terroristic threats, rape and sexual assault. As to the aggravated indecent assault count, Hardy was sentenced to a prison term of 5 to 10 years; as to the false imprisonment count, he was sentenced to a concurrent term of 9 months to 2 years; as to the simple assault count, he was sentenced to a consecutive term of 6 months to 2 years; and as to the harassment count, no term of incarceration was imposed.

Hardy filed post-sentence motions which were all denied. He then timely appealed, and the trial court entered a 1925(a) opinion giving its reasons why the judgment of sentence should be affirmed. **See** Trial Court 1925(a) Opinion, 1/9/2023, at 14-17.

In his brief, Hardy's first claim is that the evidence adduced at trial was insufficient to sustain his conviction on the count of aggravated indecent assault. He also contends in his second claim that the evidence was insufficient as to the simple assault conviction. In his final claim, Hardy argues

---

[2] Similarly, defense counsel unsuccessfully sought to have the jury instructed that it could not consider any evidence pertaining to Hardy's actions in Dauphin County. The trial court denied that request on the ground that all the charged offenses, as alleged, were part of one continuous criminal episode. **See** Trial Transcript, 3/29/2022, at p. 8.

that the evidence of his alleged conduct in Dauphin County should not have been presented to the jury because the trial's scope should have been limited to his conduct in Cumberland County.

**II.**

We first consider Hardy's challenges to the sufficiency of the evidence as to the aggravated indecent assault and simple assault convictions.

The evidence presented at trial may sustain a conviction if it is sufficient to prove every element of a given offense beyond a reasonable doubt. *See* ***Commonwealth v. Bragg***, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted). This Court must consider the evidence in the light most favorable to the verdict winner (here, the Commonwealth). *See id*.

In reviewing the evidence, this Court may not substitute its judgment for that of the fact-finder, whose role it is to weigh the credibility of witnesses and accept or reject "all, part[,] or none of the evidence." *Id*. Inconsistencies in the testimony of a witness generally do not implicate the sufficiency of the evidence. *See id*. Furthermore, specifically, as to sexual offenses, Pennsylvania law permits a jury to find a defendant guilty based on a victim's uncorroborated testimony. *See* 18 Pa.C.S. § 3106 ("The testimony of a

complainant need not be corroborated in prosecutions under this [Sexual Offenses chapter of the Crimes Code]").[3]

Aggravated indecent assault occurs when "a person who engages in penetration, however slight, of the genitals . . . of a complainant with a part of the person's body for any purpose other than good faith, medical, hygienic or law enforcement procedures commits aggravated indecent assault if . . . the person does so by forcible compulsion[.]" 18 Pa.C.S. § 3125(a)(2).

Simple assault is defined as an attempt "to cause . . . bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). In this context, "bodily injury" means "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

The evidence adduced at trial in this case was sufficient to sustain the convictions as to both assault counts. Bull testified that Hardy digitally penetrated her vagina without her consent. Although Bull waited until her second police interview to report this allegation of aggravated indecent assault, the delay alone did not, as Hardy suggests, undermine the evidence to the extent that it would preclude the jury from finding Hardy guilty of that crime.

The discrepancy between Bull's first and second police interviews created an issue of credibility. It is well established that this Court may not

---

[3] Legal sufficiency of the evidence is a pure issue of law subject to a *de novo* standard of review. **See Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa. Super. 2019).

substitute its own credibility assessment for that of the jury, and as the finder-of-fact, the jury was free to accept or reject any portion of Hardy's testimony. *See Bragg*, 133 A.3d at 330-31; *see also* 18 Pa.C.S. § 3106. Moreover, Bull gave plausible reasons for omitting part of her account in her first police interview, making it even more evident that this issue was for the jury to decide and not a matter that would implicate the legal sufficiency of the evidence.

Hardy's sufficiency claim regarding his simple assault conviction also lacks merit. At trial, the Commonwealth corroborated Bull's testimony by introducing photos of her swollen face, bruises on her arms, a torn dress and a ripped fingernail. While Hardy argues in his brief that Bull's brother saw no signs of bruising on the day of the incident, which is arguably inconsistent with Bull's account, the issue is again a matter of credibility and weight of the evidence, which is for the jury to determine.

Here, the jury observed photographs of Bull's injuries and heard her testify as to what caused them. The verdict on the count of simple assault reflects that the jury believed at least part of Bull's explanation about how her injuries occurred, and we see no reason to disturb that finding of fact on appeal.

## III.

Hardy's last claim is that the jury should have been precluded from hearing evidence concerning the alleged simple assault in Dauphin County.

Although the claim is mostly framed as an evidentiary issue in his brief, Hardy's central point really seems to be that Cumberland County was an improper venue for the simple assault count. Regardless, this claim lacks merit.

A criminal defendant generally must stand trial in the county where the alleged crime occurred. *See Commonwealth v. Callen*, 198 A.3d 1149, 1158 (Pa. Super. 2018). However, where multiple offenses are part of a single criminal episode that spans two counties, venue is proper in the court of *either* county as to all the related charges. *See* Pa. R. Crim. P. 130(A)(3) ("When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred."); *see also* 18 Pa.C.S. § 110(1)(ii) (codifying Pennsylvania's compulsory joinder rule).

Multiple crimes are committed in a single criminal episode if the offenses "are logically or temporally related and share common issues of law and fact[.]" *Commonwealth v. Witmayer*, 144 A.3d 939, 946-47 (Pa. Super. 2016). "The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related' to one another[.]" *Id*. "When we ascertain whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to

whether there is a substantial duplication of factual, and/or legal issues presented by the offenses." *Id*.

A trial court's authority to entertain charges committed in another county is an issue of venue, and the Commonwealth bears the burden of proving that venue is proper by a preponderance of the evidence. *See Commonwealth v. Gross*, 101 A.3d 28, 33 (Pa. 2014). "The single criminal episode analysis essentially considers the totality of the circumstances." *Schmidt*, 919 A.2d at 246.

In this case, the evidence established that the offenses in each county were temporally and logically connected to the extent that they were part of one continuous criminal episode. As alleged and proven at trial, Hardy assaulted Bull outside of a bar in Dauphin County and then forced her into the vehicle used to transport them to Cumberland County, where Bull was again assaulted while locked in Hardy's apartment. There was no temporal break in the sequence of events beginning with (a) the initial assault and false imprisonment, and (b) the offenses which later took place hours later in Cumberland County.

Moreover, the issue of Bull's credibility was crucial to the jury's determination as to all charges. The Commonwealth relied on the word of this witness to establish her lack of consent to sexual touching, her lack of consent to be transported from the bar to Hardy's apartment, and the cause of her injuries. This resulted in a substantial duplication of factual and legal issues

presented by the offenses. Thus, the trial court did not err in ruling that Cumberland County was a proper venue to adjudicate the alleged offenses occurring in Dauphin County.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2023

---

[4] Hardy suggests in his brief that the Commonwealth failed to follow the process outlined in Pennsylvania Rule of Criminal Procedure 555 for transferring a case from one county to another, precluding the trial court from adjudicating charges relating to offenses committed in Dauphin County. However, the subject charges were all filed in Cumberland County at the outset of the case, so there was never a case in Dauphin County to transfer, making Rule 555 inapposite. *See* Pa.R.Crim.P. 555(A).

- 11 -