J-S05021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
                                 :
            v.                   :
                                 :
                                 :
JAHJUAN ANDERSON                 :
                                 :
            Appellant            :     No. 1538 EDA 2024

Appeal from the Judgment of Sentence Entered February 2, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002531-2019

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 18, 2025**

Jahjuan Anderson (Appellant) appeals from the judgment of sentence

entered following his convictions of one count each of attempted murder,

possessing an instrument of crime (PIC), aggravated assault, person not to

possess firearms, and carrying a firearm on a public street in Philadelphia.[1]

After careful review, we affirm.

The trial court summarized the facts underlying the instant appeal:

> On May 23, 2018, Robert Bennett [(Mr. Bennett)] was walking
> with his niece on the 5800 block of Belmar Street in Philadelphia.
> [N.T.,] 9/12/23[,] at 56-57, 78.  Mr. Bennett, who was 20 years
> old at the time, had recently moved into his sister's home[,]
> together with his girlfriend, Jessica Ford [(Ms. Ford)], on the same
> 5800 block of Belmar Street.  *Id.* at 56.  While walking, Mr.

---

* Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 901(a) (2502(a)), 907(a), 2702(a)(1), 6105(a)(1),
6106(a)(1), 6108.

Bennett attempted to throw a plastic water bottle into the recycling bin outside a house at 5839 Belmar Street, which was down the block from his sister's home. *Id.* at 57, 147; Commonwealth Exhibit C-20 ("C-20"). The bottle missed the bin and landed on the home's front porch. [*Id.*] at 57. Mr. Bennett went to retrieve the bottle from the porch, and in doing so, inadvertently knocked over a three-foot tall brick wall that was on the property. *Id.* at 52, 57.

The owner of the house, Annie Anderson [(Ms. Anderson)], came outside and became angry with Mr. Bennett for knocking over the wall. *Id.* at 53, 57, 65-66. Ms. Anderson told Mr. Bennett that she wanted him to fix the wall. *Id.* at 65-66. Mr. Bennett responded that he did not have the funds to fix the wall but thought that he and his father could fix it together. *Id.* After a few minutes, Mr. Bennett's father arrived, and he continued the conversation with Ms. Anderson. *Id.* at 66-67. Mr. Bennett's father assured Ms. Anderson that they would figure something out with regard to the wall. *Id.* at 66.

Trial Court Opinion, 7/30/23, at 3-4.

In the afternoon of June 6, 2018, Appellant and another man, whom Appellant identified as his now-deceased brother, appeared at the home of Mr. Bennett's sister. Appellant identified himself as Ms. Anderson's son. Appellant and Mr. Bennett spoke on the front porch for between five and seven minutes, at which time Appellant insisted that Mr. Bennett fix the wall. During this time, the other man, who was wearing sunglasses, remained silent.

Mr. Bennett agreed to walk with the two men to Ms. Anderson's home. While doing so, Mr. Bennett texted his father. However, as Mr. Bennett looked at his phone, Appellant shot Mr. Bennett multiple times. Appellant continued firing his weapon even as Mr. Bennett pleaded with Appellant to stop. Mr. Bennett sustained ten gunshot wounds as a result of the incident.

Mr. Bennett initially told police he could not identify his assailant, but later identified Appellant as the shooter. Following an investigation, police arrested Appellant. On September 14, 2024, a jury convicted Appellant of the above-described charges. Thereafter, on February 2, 2024, the trial court sentenced Appellant to an aggregate 18-36 years in prison, followed by one year of probation. Appellant filed a post-sentence motion on February 8, 2024. While that motion was pending, Appellant filed a *pro se* notice of appeal. This Court quashed Appellant's appeal as interlocutory. ***Commonwealth v. Anderson***, No. 887 EDA 2024 (Pa. Super. filed Apr. 19, 2024) (order). The trial court denied Appellant's post-sentence motion on May 28, 2024. Thereafter, Appellant filed the instant timely appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Was the evidence introduced at trial[,] and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth as verdict winner, insufficient to establish attempted murder, aggravated assault, and related firearms charges [with Appellant] as an accomplice?

II. Was the jury verdict that Appellant was guilty of criminal attempted murder, aggravated assault[,] and related firearms charges against the weight of the evidence?

Appellant's Brief at 7.

Appellant first challenges the sufficiency of the evidence underlying his convictions. In particular, Appellant challenges his purported accomplice liability as to all charges, arguing he was merely present at the scene of the

shooting. *Id.* at 17. Appellant points out the prosecution's trial argument that Appellant "was an accomplice because he went to [Mr.] Bennett's house with his [now-deceased] brother." *Id.* Appellant argues that, based on the prosecutor's argument and the jury's questions during deliberations, "the jury had found Appellant guilty because … he acted as an accomplice." *Id.* at 19. Appellant points out that in one jury inquiry, the jury "want[ed] to confirm that the liability of conduct of another person clause can be applied to all … charges." *Id.* at 20 (quoting N.T., 9/14/23, at 5). According to Appellant, "there was insufficient evidence of record to establish that Appellant acted as an accomplice as to any of the charges." *Id.* at 21.

Appellant further asserts,

[t]here was no evidence presented by the Commonwealth that [] Appellant solicited, commanded, encouraged or requested his brother to shoot the victim. Nor was there any evidence presented that Appellant somehow aided, agreed to aid[,] or attempted to aid his brother in planning or committing the crime.

*Id.*

Appellant also directs our attention to the testimony of Ms. Ford, who described one of the two men, the one wearing sunglasses, as having a bigger build. *Id.* Appellant points out evidence that he had a larger build than his brother. *Id.* at 22. Appellant further points to Mr. Bennett's testimony that the shooter was **not** wearing sunglasses. *Id.* According to Appellant, "in order to apply accomplice liability to [] Appellant, the jury must have found that Appellant was the brother wearing sunglasses." *Id.* Challenging his

accomplice liability, Appellant argues "[t]here is no evidence the brother wearing sunglasses even knew that his brother was going to pull a gun and fire it." *Id.* at 23. Appellant asserts there is no evidence that he discussed or instructed his brother to shoot the victim, or that he supplied the firearm to his brother. *Id.* Appellant argues,

> [i]n that Appellant was in all likelihood found guilty of all charges based on his being his [brother's] accomplice, and the lack of any evidence of record to support that finding, the guilty verdicts simply cannot stand. It violates his constitutional right to a fair trial and due process of law under the 14th Amendment.

*Id.*

Our standard for reviewing a challenge to the sufficiency of the evidence is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023) (quoting *Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted)).

Regarding the crime of attempted murder, this Court has stated the following:

> Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S.[A.] § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S.[A.] § 2502(a)…. In sum, attempted murder is composed of two primary elements. The *mens rea* element of the offense is specific intent to kill, which is identical to the *mens rea* element of murder in the first degree. The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

*Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (footnote and some citations omitted; formatting altered).

"The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (citation omitted). A defendant's subsequent conduct, including flight, is evidence of consciousness of guilt, which can establish that the defendant acted with a specific intent to kill. *Commonwealth v. Moore*, 937 A.2d 1062, 1067 (Pa. 2007). "A jury may infer the specific intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Anderson*, 323 A.3d 744, 753 (Pa. 2024).

A person is guilty of PIC "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). The statute defines instrument of crime as "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d)(2). "[I]t is the actor's criminal purpose that provides the touchstone of his liability for possessing an instrument of crime." *Commonwealth v. Andrews*, 768 A.2d 309, 317-18 (Pa. 2001) (citation and internal quotation marks omitted). We have long recognized that a conviction of PIC may be sustained by wholly circumstantial evidence. *See Commonwealth v. Young*, 692 A.2d 1112, 1114 (Pa. Super. 1997) (holding that circumstantial evidence was sufficient to sustain conviction of PIC).

Appellant was convicted of aggravated assault under Section 2702(a)(1) of the Crimes Code, which provides as follows:

> **(a)** **Offense defined.--**A person is guilty of aggravated assault if he:
>
> **(1)** attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life ...

18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "An intent

- 7 -

ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*).

The Crimes Code defines person not to possess a firearm, in relevant part, as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of the sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer[,] or manufacture or obtain a license to possess, use, control, sell, transfer[,] or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). "Possession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa. Super. 1999) (*en banc*).

Lastly, Appellant challenges his conviction for carrying a firearm on a public street in Philadelphia, in violation of Section 6108 of the Uniform Firearms Act, which provides as follows:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> **(1)** such person is licensed to carry a firearm; or
>
> **(2)** such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

Finally, we observe that

[a]n actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. There is no minimum amount of assistance or contribution requirement, for [i]t has long been established that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony. Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity. … Accomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person. *See* 18 Pa.C.S.[A.] § 306.

*Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014) (emphasis and most citations omitted).

Instantly, the evidence, viewed in a light most favorable to the Commonwealth, established the following. On the day of the shooting, Appellant and another man appeared at the home of Mr. Bennett's sister. N.T., 9/12/23, at 41, 58, 67-68. As described by the trial court, the testimony, viewed in a light most favorable to the Commonwealth, established the following:

Mr. Bennett went to open the door and saw two men standing outside. [N.T., 9/12/23,] at 58, 120. One of the men, [Appellant], identified himself as Ms. Anderson's son and told Mr. Bennett that Mr. Bennett had to get Ms. Anderson's wall fixed. *Id.* at 58. Mr. Bennett and [Appellant] spoke on the front porch for about five to seven minutes, standing about five feet apart. *Id.* at 62. The other man, who[m Appellant] identified as his brother, was wearing sunglasses and did not say anything. *Id.* at 84, 108. [Appellant] was "adamant" that Mr. Bennett needed to make the situation right by fixing the wall. *Id.* at 61. Ms. Ford also came to the doorway of the house at some point and observed part of the conversation. *Id.* at 120. Mr. Bennett attempted to contact his father by sending him a text message requesting assistance. *Id.* at 58.

Eventually, [Appellant] asked Mr. Bennett to come to Ms. Anderson's house to see what Mr. Bennett could do to fix the wall. [*Id.*] at 59. Mr. Bennett agreed to walk over to the house, and he began walking down the street together with [Appellant] and the other man, who were walking about two feet behind Mr. Bennett. *Id.* at 59, 86. As they were walking, Mr. Bennett received a text message on his cellphone. *Id.* While looking down at his phone, Mr. Bennett heard the sound of a gun cocking. *Id.* **Mr. Bennett turned and saw** [**Appellant**] **holding a gun, which** [**Appellant**] **began to fire at Mr. Bennett.** *Id.* at 59, 64-65. One of the gunshots struck Mr. Bennett's leg, and he fell to the ground. *Id.* at 59. Mr. Bennett pleaded with [Appellant] to stop, but [Appellant] kept on shooting. *Id.* Mr. Bennett put his hand up, and another bullet struck his arm and sideswiped his head. *Id.* Mr. Bennett then curled up into the fetal position, and [Appellant] and the other man ran away. *Id.* at 59-60. When Ms. Ford heard the gunshots, she came out of the house and saw [Mr. Bennett] laying on the sidewalk and bleeding out. *Id.* at 120-121. Ms. Ford also saw the same two men who had previously been speaking with Mr. Bennett on the porch running away from the scene. *Id.* at 121.

Later that day, Detective Vincent Parker [(Detective Parker)] recovered two fired cartridge casings (FCCs) from the sidewalk in front of 5839 Belmar Street. *Id.* at 138-140. He also recovered an FCC from in front of 5841 Belmar Street. *Id.*

Hospital staff treated Mr. Bennett for a total of ten gunshot wounds, including one to the right forearm, four to the right thigh, and five to the left thigh. *Id.* at 174. Bullets were recovered from his left knee and right forearm. *Id.* Mr. Bennett also sustained two penetrating wounds to his scrotum, requiring one testicle to be surgically removed. *Id.* His right femur was fractured and replaced with a metal rod. *Id.* at 72, 174. Damage to the cartilage of his left knee later required surgery. *Id.* at 73, 174-175. Mr. Bennett was in the hospital for six days, and two bullets remained in his body when he was discharged. *Id.* at 175. Following his release from the hospital, [Mr. Bennett] wore a leg brace and needed to use a walker to move around. *Id.* at 74.

Trial Court Opinion, 7/30/24, at 4-5 (emphasis added).

- 10 -

The evidence further established that although Mr. Bennett initially denied seeing the shooter, he subsequently identified Appellant as his assailant to the police and at trial:

On July 17, 2018, Mr. Bennett told Detective Parker that he did in fact see the man who shot him. [N.T., 9/12/23,] at 74-76. Mr. Bennett also stated that the person wearing sunglasses was not the person who had shot him. *Id.* at 87. On that same date, Detective Robert Conway administered two photo arrays to Mr. Bennett. *Id.* at 110, 154-156, 170-172; Commonwealth Exhibit C-9 ("C9"); Commonwealth Exhibit C-10 ("C-10"). In the first photo array, Mr. Bennett identified [Appellant] as the shooter. N.T. 9/12/23 at 110; C-9. Mr. Bennett also identified [Appellant] as the shooter while testifying at trial. N.T. 9/12/23 at 60-61. Mr. Bennett did not recognize anyone in the second photo array, which included a photograph of [Appellant's] brother. *Id.* [at] 172-173; C-10.

Trial Court Opinion, 7/30/24, at 6.

Finally, the evidence established that, following Appellant's arrest, he was released on bail. N.T., 9/12/23, at 175. As a condition for bail, Appellant was required to remain at 5839 Belmar Street in Philadelphia, and regularly check in with his bail officer. *Id.* Appellant left the 5839 Belmar residence without permission on August 19, 2022, and stopped reporting to his bail officer. *Id.* Appellant further failed to appear for trial on September 23, 2022. *Id.* Police later apprehended Appellant in June 2023. *Id.* at 175-76.

Contrary to Appellant's argument, the evidence, viewed in a light most favorable to the Commonwealth, is sufficient to sustain Appellant's convictions as the *perpetrator* of the shooting. Regarding his conviction of attempted murder, the evidence established that Appellant, with the specific intent to

kill, shot Mr. Bennett multiple times, fled the scene, and subsequently absconded while on bail. *See Anderson*, 323 A.3d at 753; *Predmore*, 199 A.3d at 929; *Moore*, 937 A.2d at 1067. Thus, Appellant's challenge to the sufficiency of the evidence underlying his attempted murder conviction lacks merit.

The above evidence further established Appellant possessed an instrument of crime with the intent to shoot Mr. Bennett. Thus, the evidence is sufficient to sustain Appellant's conviction of PIC. *See* 18 Pa.C.S.A. § 907(a). Regarding Appellant's conviction of aggravated assault, the evidence established that Appellant, in fact, caused serious bodily injury to Mr. Bennett, by shooting him multiple times with a deadly weapon. *See* 18 Pa.C.S.A. § 2702(a)(1).

The evidence further is sufficient to sustain Appellant's conviction of person not to possess a firearm. At trial, the Commonwealth presented evidence that Appellant was prohibited from possessing a firearm because of his prior criminal conviction for possession of a controlled substance with the intent to deliver.[2] N.T., 9/14/23, at 31; *see also* 18 Pa.C.S.A. § 6105(a)(1). Lastly, the above-stated evidence sufficiently established that Appellant carried a firearm on a public street in Philadelphia, in violation of 18 Pa.C.S.A. § 6108.

_____

[2] *See* 35 P.S. § 780-113(a)(30).

While Appellant claims the jury found him guilty as an accomplice, we decline to speculate about the jury's reasons for its verdict. ***See Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (in a case challenging a jury's inconsistent verdicts, stating, "[a]s we have already determined that there was sufficient evidence to support the jury's verdict regarding [the defendant's] conviction of murder of the first degree, we decline to speculate as to the reason for the jury's determination."). As the evidence is sufficient to sustain each of Appellant's convictions, his first issue merits no relief.

In his second issue, Appellant argues the verdicts are against the weight of the evidence. Appellant's Brief at 24. Appellant asserts that "it was his brother and not he who committed the crime." *Id.* at 25. According to Appellant, [Appellant and his brother] sought out Mr. Bennett "to discuss fixing the wall." *Id.* Appellant claims he had "no idea his brother was going to do anything to" Mr. Bennett. *Id.* at 26. Appellant relies on inconsistencies in the identification testimony of Ms. Ford and Mr. Bennett. *Id.*

Appellant asserts that Ms. Ford identified the male "leaning on the railing as Appellant. The other brother who was standing on the porch had been the one talking to [Mr.] Bennett." *Id.* Appellant next points out Mr. Bennett's inconsistent statements to police. *Id.* at 27-28. According to Appellant, "[i]t is questionable whether [Mr.] Bennett even saw the face of the shooter at all." *Id.* at 29. Appellant points to Mr. Bennett's testimony that he was walking in

front of the two men when he was shot. *Id.* Appellant further directs our attention to studies questioning the reliability of eye-witness testimony. *Id.* at 28.

As this Court has explained,

[a] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court, and a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice.

In reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose an abuse of discretion.

*Commonwealth v. Anderson*, 323 A.3d 744, 756-57 (Pa. 2024) (internal citations, quotation marks, and brackets omitted).

An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted). To mount an abuse-of-discretion attack against the trial court's rejection of his weight challenge, Appellant must demonstrate "how the trial court's ruling overrode the law, was manifestly unreasonable, or the product

- 14 -

of bias, prejudice, ill-will or partiality." ***Commonwealth v. Rogers***, 259 A.3d 539, 541 (Pa. Super. 2021).

Instantly, the trial court considered and rejected Appellant's weight challenge:

> In light of the evidence[,] … the verdict is not contrary to the evidence and does not shock one's sense of justice. The verdict was supported by a clear and unqualified identification of [Appellant] as the shooter by the victim, Mr. Bennett. The [c]ourt found Mr. Bennett's testimony to be credible, based on his demeanor and the substance of his testimony. Mr. Bennett had ample opportunity to observe [Appellant's] face while standing five feet away from him on the porch and speaking with him for five to seven minutes. Mr. Bennett also turned and saw [Appellant's] face as [Appellant] shot him. [N.T., 9/12/23,] at 59, 64-65. Mr. Bennett identified [Appellant] as the shooter with confidence through the use of a photo array on July 17, 2018, and again while testifying at trial. ***Id.*** at 110, 172; C-9.
>
> Ms. Ford also identified [Appellant] in a photo array as one of the two men who came to the house on the day of the shooting. [***Id.***] at 127; C-13. Although she described [Appellant] as looking like the person who had been wearing sunglasses, which was inconsistent with Mr. Bennett's testimony, Ms. Ford's opportunity to observe [Appellant] was not as lengthy in time and as close in distance as that of Mr. Bennett. Under such circumstances, it would not shock one's conscience for the jury to credit the identification testimony of Mr. Bennett over that of Ms. Ford. Moreover, [Appellant's] flight from his home while on bail, and failure to appear for his scheduled trial date, are additional circumstances tending to prove his consciousness of guilt.
>
> In light of the compelling evidence of [Appellant's] guilt, the verdict was not contrary to the weight of the evidence ….

Trial Court Opinion, 7/30/24, at 13-14.

The trial court's determination is supported by the evidence and we discern no abuse of the court's discretion in rejecting Appellant's weight

challenge. We decline to second-guess the trial judge's exercise of discretion, to unsettle the jury's credibility determinations, or to reweigh the evidence in favor of Appellant. *See Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence."); *Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017) (recognizing it is the jury's exclusive province to weigh inconsistencies in a witness's testimony and to make credibility determinations). Consequently, Appellant's second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2025

- 16 -